O’CONNELL, Justice.
Nelson Ayala, appellant, was plaintiff below and Clyde W. Murrell, appellee, was defendant. The parties will be referred to as they were in the trial court.
Plaintiff, distributor of petroleum products and automotive equipment, on August 5, 194S entered into a written contract with Sidney and James Howell, who then owned and occupied the land involved in this suit. The contract, which was recorded in the public records of Polk County on December 12, 1951, provided that the Howells who operated a service station on the land, would purchase petroleum products only from plaintiff, who agreed to sell to them for fifteen years their entire requirements as to such products. Among other things the contract provided:
“It is expressly understood and agreed that the terms, covenants and conditions of this agreement shall be and constitute covenants running with and binding upon the premises above described, and shall constitute an obligation on said premises regardless of the title or ownership thereof and regardless of any change which may take place therein.”
Plaintiff alleges that contemporaneously with the contract referred to above, and as a part of the same transaction, he loaned the Howells $15,000, taking as security a mortgage upon the land and premises involved. Payments of principal and interest for the retirement of the loan were to be made by the Howells at the rate of $150 per month with oral understanding that the Plowells would, for gasoline delivered to them, pay one cent per gallon over and above the standard tank wagon price, which payments were to be applied against the monthly mortgage payments of $150. Should the sum derived by the payment of one cent per gallon exceed $150 it was to be paid nevertheless, but if it failed to reach the amount of $150 the Plowells were to pay plaintiff the deficiency.
Plaintiff alleged that in January 1952 when the defendant went into possession of the subject lands and began operating the filling station thereon the defendant accepted, recognized and ratified the contract involved herein; that until this suit was filed on March 16, 1954 the defendant had performed all the terms of said contract, had purchased all petroleum products sold on said lands from plaintiff and had paid the sum of one cent above standard tank wagon prices on all gasoline purchased by him as provided in said contract.
Plaintiff also alleged that defendant had demanded that plaintiff perform the terms of said contract and had accepted performance by plaintiff thereunder.
Plaintiff further alleged that beginning in the year 1953 defendant began to demand a reduction of one cent per gallon in the price of gasoline and when plaintiff refused to accede, he established contact *15 with another distributor of such products and just prior to filing of this suit began to remove plaintiff’s tanks and equipment from the land.
Plaintiff then filed his complaint seeking a temporary restraining order enjoining the defendant from removing from his premises the gasoline pumps and other equipment belonging to plaintiff; asking that defendant be permanently enjoined from violating the terms and conditions of the contract, on the ground that such conditions were covenants and conditions running with the land upon which the service station was located; and asking that the defendant be enjoined from handling the petroleum products of anyone other than the plaintiff.
It is unnecessary to a decision in this case that we determine whether the contract in question constitutes either a covenant running with the land, or a servitude on the land enforceable in a court of equity.
The allegations of the complaint dearly allege that the defendant had for a period of many months assumed the contract made between the plaintiff and defendant’s predecessors, the Howells, had performed it, and had demanded that the plaintiff perform thereunder, which he alleged that he did and is now willing to do.
This Court in Manatee County Growers’ Ass’n v. Florida Power & Light Co., 1934, 113 Fla. 449, 152 So. 181 held, under a not dissimilar factual situation, that' the defendant in that case had assumed and made its own a contract executed between the power company and the predecessor of the defendant growers’ association and that it could be enjoined from breaching that contract. In that case the power company and the predecessor of the growers’ association had entered into a contract whereunder the power company agreed to furnish and the growers’ association’s predecessor agreed to receive and pay for all power and energy required by it in the operation of a certain celery washing-afld precooling plant for a term of ten (10) years. About a year after execution of the contract the defendant growers’ association became' the owner of the plant, and although it did not by specific agreement, or assignment agree to perform the agreement as to furnishing of power and energy, it did continue to perform under said . agreement for approximately one year thereafter at which timé it decided to produce its own power and cease purchasing same from the plaintiff power company.
This Court held that the growers’ association had by its conduct assumed and made its own the said contract for furnishing and receipt of power and that it could be enjoined from breaching it, citing on page 184 of 152 So,, with approval the following statement of United States Supreme Court in Wiggins Ferry Co. v. Ohio & Miss. R. Co., 1891, 142 U.S. 396, 408-409, 12 S.Ct. 188, 35 L.Ed. 1055:
“ ‘If a person conduct himself in such manner as to lead the other party to believe'that he has made a'contract his own, and his acts are only explicable upon that theory, he will not.be permitted afterwards to repudiate any of its obligations.’ ”
We think this principle is equally applicable here.
It follows therefore that the complaint was not without equity and therefore should not have been dismissed.
Accordingly this cause is reversed for further proceedings not inconsistent herewith.
TERRELL, C. J., ROBERTS and THORNAL, JJ„ and WELCH, Circuit Judge, concur.